Ann HULL, also known as Ann Hastings,
doing business under the name of
Ann Hastings, Appellant,

v.

Rudolph D. GAMBLIN, Appellee.

No. 4235.

District of Columbia Court of Appeals.

Argued Dec. 11, 1967.

Decided May 13, 1968.

**740**

Donald Cefaratti, Jr., Washington, D. C., with whom William E. Cumberland, Washington, D. C., was on the brief, for appellant.

R. Craig Kauffman, Washington, D. C., for appellee. James W. Hiney, Jr., and Gerald K. Kita, Washington, D. C., also entered an appearance for appellee.

1. Article 2031b, Section 3, of Vernon's Annotated Civil Statutes of Texas provides: Any foreign * * * partnership, or non-resident natural person that engages in business in this State, irrespective of any Statute or law respecting designation or maintenance of resident agents, and does not maintain a place of regular business in this State or a designated agent upon whom service may be made upon causes of action arising out of such business done in this State, the act or acts of engaging in such business within this State shall be deemed equivalent to an appointment by such foreign * * * partnership, or non-resident natural person of the Secretary of State of Texas as agent upon whom service of process may be made in any action, suit or proceedings arising out of such business done in this State, wherein such * * * partnership, or non-resident natural person is a party or is to be made a party.

Section 4 of the same Article provides: For the purpose of this Act * * * any foreign * * * partnership, or non-resident natural person shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State, or the committing of any tort in whole or in part in this State.

Before HOOD, Chief Judge, MYERS, Associate Judge, and QUINN Associate Judge (Retired).

MYERS, Associate Judge:

Appellee, a Texas resident, filed suit in a Texas court alleging fraud and seeking damages from appellant, a District of Columbia resident. Substituted service, pursuant to Article 2031b of Vernon's Annotated Civil Statutes of the State of Texas, was had upon appellant, who did not appear in Texas to defend the action. The court appointed an attorney *ad litem* to represent her, and, after trial, judgment was entered for appellee. Thereafter, appellee filed an action in the District of Columbia Court of General Sessions alleging that the Texas judgment remained unsatisfied. Appellant answered, denying the validity of the Texas judgment. After a full hearing, the trial judge found, *inter alia,* that service on appellant in the Texas action was proper and that the Texas court had jurisdiction. Accordingly, judgment was entered in favor of appellee in the amount of the Texas judgment, from which this appeal is taken.

## I JURISDICTION OF THE COURT

Appellant's primary contention is that the Texas court did not have personal jurisdiction over her and therefore its judgment is void. Appellee cites the Texas "long arm" statute [1] as conferring author-

ity on the Texas court to assume personal jurisdiction over appellant and contends that, as applied here, the statutory service fully meets the due process requirements of the Fourteenth Amendment.

The Supreme Court of Texas has ruled that "jurisdiction in this type of case must affirmatively appear on the face of the record. The provisions of Article 2031b are clear, and the plaintiff has the burden of making sufficient allegations to bring defendant within its provisions." McKanna v. Edgar, 388 S.W.2d 927, 930 (1965). To determine whether there are jurisdictional allegations sufficient to bring Article 2031b into operation, we confine ourselves to the Texas record, which reveals the following:

Appellant placed a listing in the Amarillo, Texas, classified telephone directory under the heading "Patent Searchers," advertising "Free Invention Protection Forms" and giving her District of Columbia address and telephone number. In response to this advertisement, appellee, a Texas resident, wrote to appellant inquiring as to the patentability of a device he had invented. Appellant replied, stating that, for a small fee, she would conduct a preliminary patent search in the District of Columbia. Appellee accepted the proposal. Shortly thereafter appellant advised appellee by mail that, in her opinion, his invention was patentable and offered to prepare a patent application in return for a second and larger fee. A lengthy correspondence followed, as a result of which, at appellee's request, appellant prepared the application, mailed it to Texas for appellee's approval and signature, and, upon its return to her, filed it with the United States Patent Office here. The application

was rejected. Appellee then filed suit in Texas alleging that appellant had fraudulently misrepresented her qualifications to give advice on the patentability of new inventions and to prepare patent applications. The Texas court found for appellee and entered judgment in his favor.[2]

The question initially presented is whether the Texas "long arm" statute, set forth in part in the margin, authorizes the Texas trial court to assume personal jurisdiction over a tort-feasor who never entered Texas and who performed all the acts which are the basis of the Texas suit outside the state, where the injury directly resulting from those acts was suffered wholly within Texas borders. The answer to this question must depend on whether appellant was "doing business" in Texas within the definition of Article 2031b.

It has been held that Section 4 of Article 2031b, defining "doing business" as "the committing of any tort in whole or in part" in Texas, "is clearly intended to include a situation where the operative wrongful act occurs in another state but the injury occurs in Texas." Hearne v. Dow-Badische Chem. Co., 224 F.Supp. 90, 96 (S.D.Tex.1963). This interpretation is applicable to appellant here.

No cases in the Texas appellate courts interpreting the challenged provisions of the statute here involved[3] have been called to our attention, but in construing language substantially identical to Article 2031b as contained in the Minnesota "long arm" statute,[4] the Supreme Court of Minnesota has held that language to mean that a court of that state may assume personal jurisdiction over a nonresi-

---

2. We are not empowered to review the findings and conclusions of the Texas trial court. Such review must be by direct appeal to the appropriate Texas appellate court.

3. This may be partly due to the fact that Texas did not permit a special appear-

ance for the limited purpose of contesting jurisdiction until September 1, 1962, when Rule 120a of the Texas Rules of Civil Procedure went into effect.

4. Minnesota Statutes Annotated, Section 303.13, subd. 1(3).

dent defendant who commits wrongful acts outside Minnesota when the injury resulting from those acts occurs in Minnesota. Atkins v. Jones & Laughlin Steel Corp., 258 Minn. 571, 104 N.W.2d 888 (1960).[5] When a statute confers upon the courts of a state jurisdiction over defendants who commit torts "in whole or in part" within that state, the statute clearly intends to grant jurisdiction over nonresident defendants whose wrongful acts committed outside the state cause injury to residents within that state.[6] Where more limited jurisdiction is intended, statutes have been worded differently.[7]

■ We are convinced that the language of Article 2031b clearly authorized the Texas court to assume personal jurisdiction over appellant, a nonresident whose wrongful acts, although committed outside Texas, caused injury to a Texas resident within the state.

## II  CONSTITUTIONALITY OF TEXAS "LONG ARM" STATUTE

■ Appellant next contends that application of the "long arm" statute is unconstitutional because she did not have the minimum contacts with Texas essential to satisfy the due process requirements of the Fourteenth Amendment. International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Initially, we note that the *Hearne* and *Atkins* cases, supra, as well as the *Gray* case, supra n. 7, have all held that a state's assumption of personal jurisdiction over nonresident defendants in fact situations similar to the present case met the requirements of due process. In both *Atkins* and *Gray*

the contacts of the nonresident defendant with the respective forums were fortuitous, while in the case before us the contacts of appellant with the Texas forum were sought and established intentionally. Yet, in *Atkins* the Minnesota Supreme Court held: "It seems only fair to permit one who has suffered a wrong at the hands of a resident of a foreign state to sue in his own state irrespective of whether he can show multiple transactions or not," quoting from its earlier decision in Beck v. Spindler, 256 Minn. 543, 99 N.W.2d 670, 677 (1959).

The Supreme Court in Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), ruled that application of the minimum contacts rule "will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

There has been, over recent years, a clearly discernible trend toward expanding the permissible scope of state jurisdiction over nonresidents. McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). However slight or heavy may be the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has the "minimal contacts." We are satisfied that under the facts of the present case appellant possessed the prerequisite minimal contacts for a valid exercise by the Texas trial court of personal jurisdiction over her. We are also convinced that for the

---

5. See also Hutchinson v. Boyd & Sons Press Sales, Inc., 188 F.Supp. 876 (D. Minn.1960).

6. The language of the Vermont statute (Vermont Statutes 1947 Section 1562) is also similar to that of the Texas and Minnesota "long arm" statutes.

7. The New York state legislature worded its statute to confer jurisdiction only over

nonresident defendants who enter that state and commit a tortious act within the state. Longines-Wittnauer Co. v. Barnes Reinecke, 15 N.Y.2d 443, 460, 261 N.Y.S.2d 8, 21, 209 N.E.2d 68 (1965). But cf. Gray v. American Radiator Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961).

Texas court to assume jurisdiction over appellant does not offend "traditional notions of fair play and substantial justice," as laid down in International Shoe Co. v. State of Washington, supra, 326 U.S. at 316, 66 S.Ct. at 158. Of her own choice and upon her own initiative appellant advertised her services in a publication designed for general circulation only in Texas. But for that advertisement, appellee might never have been in communication with appellant. All representations forming the basis for the suit were addressed to a Texas resident. All appellant's essential business purposes were carried on in Texas as fully as if she had been present in the state. The fact that the record of the Texas court does not show a continuous course of business transactions between appellant and numerous other Texas residents does not prevent either Texas or this court from finding the necessary minimum contacts.[8]

## III WAS THE JUDGMENT OBTAINED AGAINST THE WRONG PARTY?

The judgment in Texas was obtained by appellee against "Ann Hastings, an individual." Appellant contends that her correct name is "Ann Hull" (which appears to be her married name) and that only a partnership with which she has been associated carries the name "Ann Hastings." She does not deny that she is the person who dealt with appellee and who made all the representations upon which he based his suit against her.

At trial in this jurisdiction, appellee charged that "Ann Hastings" is not merely a partnership name but is a name by which appellant is generally known. A disinterested witness testified that she met appellant personally when interviewing her for a magazine article and was led to believe that appellant's name was "Ann Hastings." Typewritten letters were also produced

bearing the hand-written signature "Ann Hastings," and it was established that "Ann Hastings" was appellant's maiden name.

■ Since appellant held herself out to be "Ann Hastings" and conducted all her business with appellee under this name, she is not in a position to collaterally attack the Texas judgment by claiming at this date that her name is something other than that used in her business transaction with appellee.

## IV NOTICE TO APPELLANT OF TEXAS SUIT

Appellant was originally served under Texas law with a complaint filed in a Texas court which sought compensatory damages plus $1,000 punitive damages. That complaint was never answered by appellant. Appellee later served an amended complaint on the court appointed attorney *ad litem* in which actual damages plus $500 punitive damages were asked. The Texas judgment awarded actual damages and $500 exemplary damages.

Aside from a variance in the amount of punitive damages sought (the amount in the amended complaint being fifty per cent less than originally demanded), the only difference between the two complaints was the addition of a new paragraph before the *ad damnum* clause wherein appellee recited:

> The acts of the Defendant [appellant] being willful, malicious, and having caused actual damages to Plaintiff [appellee] exemplary damages of $500.00 are proper to be awarded the Plaintiff [appellee].

This paragraph merely rephrased similar allegations contained in both the original and the amended complaints.

■ In Texas "a defendant who has been cited, but has not been answered, must

8. Comparably, in the nonresident motorist cases, it has been held that a single transaction by a nonresident may be made the basis for amenability to suit in the state where the transaction occurred. Compania De Astral, S.A. v. Boston Metals Co., 205 Md. 237, 107 A.2d 357, 108 A.2d 372, 49 A.L.R.2d 646 (1954).

be notified of every amendment which sets up a new cause of action or requires a more onerous judgment against him." San Antonio, U. & G. R. Co. v. Hales, Tex.Civ.App., 196 S.W. 903 (1917); Reyman v. Reyman, Tex.Civ.App., 308 S.W.2d 595, 597 (1957); Rule 124 Texas Rules of Civil Procedure. Assuming, *arguendo*, that service of the amended complaint upon the attorney *ad litem* might not constitute valid notice to appellant, in our judgment the amended complaint did not "set up a new cause of action." It clearly did not require "a more onerous judgment." We hold, therefore, that the failure to serve appellant with a copy of the amended complaint does not constitute defective notice of the action in the Texas court.

We have considered other alleged errors and find them without substance. Having concluded that the "long arm" statute of Texas empowered the Texas court to assume personal jurisdiction over appellant; that the due process requirements of the Fourteenth Amendment were not violated; that proper service was effected under Texas law; and that there is no error in the record which justifies reversal of the judgment of the trial court here, the judgment against appellant in favor of appellee is

Affirmed.