Jay S. SISKIND et al., Petitioners,

v.

The VILLA FOUNDATION FOR EDU-
CATION, INC. et al., Respondents.

No. C–976.

Supreme Court of Texas.

Nov. 3, 1982.

Rehearing Denied Dec. 31, 1982.

Byrnes, Myers, Adair, Campbell & Sinex, K. Ray Campbell, Houston, for petitioners.

Baker & Botts, David Randolph Smith, Houston, for respondents.

McGEE, Justice.

Petitioner, Jay Siskind, individually and as next friend of his minor son Marc, instituted this suit against Respondents, the Villa Foundation for Education, Inc. (Villa), Jeanette Steinbeck, Carman Coco, Scott

Slocum, and Edward Beavel. Villa is an Arizona corporation which operates the Villa School in Toltec, Arizona. Steinbeck, Coco, Slocum, and Beavel are employees of the school and are all residents of Arizona. This is an appeal from an order sustaining Respondents' special appearance entered pursuant to Rule 120a, Tex.R.Civ.P. The trial court's dismissal of Siskind's suit for lack of personal jurisdiction was affirmed by the Court of Appeals. 624 S.W.2d 803. We reverse the judgment of the Court of Appeals with respect to Villa and remand the cause for trial. As to the individual Respondents, we affirm the judgment of the Court of Appeals.

The issue in this case is whether Villa, Steinbeck, Coco, Slocum, and Beavel are amenable to suit in Texas. The resolution of this question turns on whether Villa and these individuals possess sufficient minimum contacts with Texas so as to satisfy the constitutional test of due process. *International Shoe Co. v. Washington,* 326 U.S. 10, 66 S.Ct. 154, 90 L.Ed. 95 (1947).

The Villa School's curriculum is designed to aid students who experience motivational problems in an ordinary school environment. A majority of the school's students are not Arizona residents, and a number of the students are Texans. Villa, moreover, solicits business in Texas by advertising in national publications which are circulated in Texas.[1] Villa also advertises in the El Paso, Houston and Lubbock telephone directories.[2] Villa, however, does not personally interview prospective students in Texas.

Mr. Siskind, a resident of Houston, learned of the Villa School through Childrens' Resource Information Service and various advertisements in *National Geographic* and *Sunset* magazines. In response to these advertisements, Siskind telephoned Villa and inquired about the possibility of enrolling Marc in the school. In accordance with its usual practice, Villa mailed Siskind an informational packet and an application for Marc's enrollment. Siskind completed the application and mailed it to Villa. After processing Marc's application, Villa mailed Siskind an enrollment contract. Siskind signed the contract in Texas and mailed it to Villa in Arizona, where it was signed and accepted by Villa. Marc was then enrolled for the remainder of the school year.

Prior to the commencement of the following academic year, Villa, again in accordance with its usual practice, mailed Siskind a form letter inviting him to re-enroll Marc. A new enrollment contract was enclosed along with this letter. Before signing and returning the contract to Villa, however, Siskind made two modifications. First, he deleted a provision stating that Arizona would be the exclusive forum for any disputes arising under the contract. Second, he altered a provision concerning tuition refunds; Marc's tuition would be refunded if Marc left the school during the school year and another student was subsequently enrolled in his place. Originally, the contract provided that Marc's tuition would not be refundable. As modified, this contract was signed and accepted by Villa in Arizona.

In November of 1979, Marc was expelled from school. Villa refused to refund his tuition, and Siskind filed suit in Houston, Texas. In his petition, Siskind alleged nu-

---

1. Villa advertises in the following publications: *Ambassador's Yearbook, The Christian Science Monitor, Educational Register, Guide to Independent Schools, The Herald Tribune, National Geographic Magazine, Southern Living, Sunset Magazine,* and *Town and Country.* Mrs. Steinbeck, the associate director of the school, testified that Villa engages in an effort to advertise all around the world.

2. Villa also advertises in the telephone directories of the following cities: Anchorage, Alaska; Phoenix and Tucson, Arizona; Little Rock, Ar-

kansas; Vancouver, British Columbia (Canada); Marin County and San Diego, California; Denver, Colorado; Oahu-Honolulu, Hawaii; Boise, Idaho; Wichita, Kansas; Winnipeg, Manitoba (Canada); Suburban St. Louis, Missouri; Billings and Great Falls, Montana; Las Vegas, Nevada; Albuquerque, New Mexico; Fargo, North Dakota; Cincinnati-Hamilton County, Ohio; Oklahoma City and Tulsa, Oklahoma; Seattle, Washington; and Caspar, Wyoming.

merous causes of action, including breach of contract, misrepresentation, and violation of the Texas Deceptive Trade Practices Act, Tex.Bus. & Com.Code Ann. § 17.41 *et seq.* According to Siskind, Villa advertises and represents by mail that it can help problem students; Villa then accepts these students and their tuition knowing they present dicipline problems, expels them based upon a fabricated excuse, and retains their tuition without providing the promised services. Siskind's allegations indicate that Steinbeck, Coco, Slocum, and Beavel are the principal actors in this conspiracy.[3] Service of process on all Respondents was accomplished pursuant to Texas' long arm statute, Tex.Rev.Civ.Stat.Ann. art. 2031b. This case, however, does not involve questions concerning the literal reach of article 2031b, but only the constitutional question of minimum contacts.

■ In determining the constitutional reach of this state's jurisdiction over nonresidents who maintain only a single or few contacts with Texas, this Court applies a three-pronged test. *U-Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760 (Tex.1977), *cert. denied,* 434 U.S. 1063, 98 S.Ct. 1235, 55 L.Ed.2d 763 (1978). In order to maintain jurisdiction over nonresidents such as Villa and the individual Respondents:

(1) the nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the

respective parties, and the basic equities of the situation.

*O'Brien v. Lanpar Co.,* 399 S.W.2d 340, 342 (Tex.1966).

■ In our opinion, Villa's advertising activities satisfy the first prong of the *O'Brien* test. *See Wilkerson v. Fortuna, Inc.,* 554 F.2d 745 (5th Cir.), *cert. denied,* 434 U.S. 939, 98 S.Ct. 430, 54 L.Ed.2d 299 (1977); *Hardy v. Pioneer Parachute Co.,* 531 F.2d 193 (4th Cir.1976). Villa's decision to advertise in Texas telephone directories, in and of itself, is a sufficiently purposeful act that is done in Texas. In *Hull v. Gamblin,* 241 A.2d 739 (D.C.App.1968), for example, Hull's sole contact with Texas was a listing in the Amarillo telephone directory under the heading "Patent Searchers." The listing gave her District of Columbia address and phone number and advertised "Free Invention Protection." Upholding the trial court's enforcement of a Texas judgment rendered against Hull for fraud, the court reasoned:

Of her own choice and initiative, appellant advertised her services in a publication designed for general circulation in Texas. But for that advertisement, appellee might never have been in communication with appellant. All representations forming the basis of the suit were addressed to a Texas resident. *All appellant's essential business purposes were carried out in Texas as fully as if she had been present in the state.*

*Id.* at 743 (emphasis added). Considering Villa's advertising in conjunction with its practice of mailing informational packets, applications for admission, invitations to reenroll, and enrollment contracts to Texas residents, it is apparent that Villa is affirmatively seeking business in Texas. Villa's solicitation of Texas business, consisting of representations made in Texas, is a purposeful act committed in Texas. *Vencedor Manufacturing Co. v. Gougler Industries, Inc.,* 557 F.2d 886, 891 (1st Cir.1977).

---

**3.** Apart from the breach of contract claim, however, Siskind's allegations do not differentiate between Villa and the individual Respondents. Siskind claims that all of the Respon-

dents are jointly and severally liable for the acts he complains of, and that the individual Respondents are liable individually and as agents of Villa.

There is also a connection between Villa's solicitation of business in Texas and Siskind's cause of action. Siskind's allegations of misrepresentation are based on Villa's advertisements and letters, as well as his telephone conversations with the school's personnel. Siskind, moreover, relied on Villa's representations in Texas. *Read v. Cary,* 615 S.W.2d 296, 299 (Tex.Civ.App.— Dallas 1981, no writ); *Hoppenfeld v. Crook,* 498 S.W.2d 52, 56 (Tex.Civ.App.—Austin 1973, writ ref'd n.r.e.). *See also Hull v. Gamblin, supra.* If proven, these allegations would support a judgment in Siskind's favor under the Deceptive Trade Practices Act. *See* Tex.Bus. & Com.Code Ann. § 17.46(a), (b)(5), (b)(7). Finally, there is a connection between Siskind's claim for breach of contract and Villa's contacts with Texas. Siskind alleged that Villa's representations made to him in Texas induced him to enter a contract which was partially executed in Texas.

Villa cites numerous cases which stand for the proposition that a contract which is negotiated by mail with a resident of the forum cannot support the exercise of *in personam* jurisdiction when the contract is to be performed in another state. *E.g., Barnstone v. Congregation Am Echad,* 574 F.2d 286 (5th Cir.1978) (per curiam); *American Steel, Inc. v. Cascade Rolling Mills, Inc.,* 425 F.Supp. 301 (S.D.Tex.1975); *U-Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760 (Tex.1977), *cert. denied,* 434 U.S. 1063, 98 S.Ct. 1235, 55 L.Ed.2d 763 (1978); *Sun-X International Co. v. Witt,* 413 S.W.2d 761 (Tex.Civ.App.—Texarkana 1967, writ ref'd n.r.e.). None of the nonresident defendants in these cases, however, solicited business in Texas to the same degree that Villa has in this case. More importantly, none of these cases involved allegations of misrepresentation and deceptive trade practices arising out of the defendant's contacts with Texas. The fact that Villa accepted the contract and was to perform its obligations thereunder in Arizona is not determinative. As the First Circuit observed in *Vencedor, supra,* "a truly interstate business may not shield itself from suit by a careful, but formalistic

structuring of its business dealings." 557 F.2d at 891.

Subjecting Villa to the jurisdiction of the Texas courts does not offend traditional notions of fair play and substantial justice. Having actively and successfully solicited business in Texas, it is not unreasonable to require Villa to defend a suit based on its contacts with Texas. The quantity of Villa's contacts with Texas may be truly minimal, but the qualities of these contacts are substantial. At the special appearance hearing, Mrs. Steinbeck admitted that the school could not survive if its enrollment was limited to Arizona residents.

Villa, however, contends that the courts are less likely to assume jurisdiction when the nonresident defendant is a school. We disagree.

Regardless of whether Siskind's suit is tried in Arizona or Texas, one of the parties and a substantial number of witnesses will be required to travel to a distant forum. Given the benefits that Villa has reaped in Texas, it does not seem unreasonable to require Villa to assume this burden, particularly since Siskind deleted the exclusive forum provision of the enrollment contract. By enacting the Deceptive Trade Practices Act, moreover, Texas has demonstrated a special interest in protecting its citizens from the sort of activity Siskind alleges here. *See McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). All of these factors point to Texas as the logical forum for Siskind's claims against Villa.

The individual Respondents, however, do not have sufficient contacts with Texas to justify the exercise of *in personam* jurisdiction. In Siskind's petition, no specific acts of conspiracy or misrepresentations are attributed to Steinbeck, Coco, Slocum, or Beavel, nor is it alleged that they are the alter ego of Villa. In this setting, Villa's solicitation of business in Texas cannot be imputed to the individual Respondents so as to render them amenable to suit in Texas. As *Rush v. Savchuk,* 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980) makes clear, it is

the contacts of the defendant himself that are determinative.[4]

We recognize that it was incumbent upon these individuals to negate all bases of personal jurisdiction. Thode, *In Personam Jurisdiction; Article 2031b, The Texas "Long Arm" Jurisdiction Statute; And the Special Appearance to Challenge Jurisdiction in Texas and Elsewhere,* 42 Texas L.Rev. 279, 322 (1964). At the special appearance hearing, the only evidence offered to negate jurisdiction was Steinbeck's testimony that she and the other individuals were residents of Arizona. Villa's answers to interrogatories propounded by Siskind confirm this fact. In view of Siskind's failure to allege any act by these individuals in Texas, we believe that the individual Respondents have sustained their burden.[5]

■ Subjecting the individual Respondents to the jurisdiction of the Texas courts violates "traditional notions of fair play and substantial justice." Siskind's attempt to hail these individuals into a Texas court based on Villa's contacts fails the ultimate test of due process. Absent some allegation of a specific act in Texas, or one with reasonably foreseeable consequences within this state's borders, a nonresident employee of a foreign corporation cannot be sued in Texas simply because his or her employer solicits business here. Constitutional considerations of due process forbid this bootstrapping of minimum contacts. *See Rush v. Savchuk, supra,* 444 U.S. at 329, 100 S.Ct. at 577.

The judgment of the Court of Appeals affirming the trial court's dismissal of Siskind's suit against Villa is reversed. That part of Siskind's suit is severed and remanded for trial. In all other respects, the judgment of the Court of Appeals is affirmed.

4. Although *Rush* involved the attempted exercise of *quasi in rem* jurisdiction, its principles are equally applicable to the attempted exercise of *in personam* jurisdiction. As the Supreme Court indicated in *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), the exercise of jurisdiction over nonresidents in *any* case must satisfy the due process requirements of minimum contacts with the forum.

5. Of course, a nonresident need not be physically present in the state. Due process is satisfied if the defendant's activities outside the state have reasonably foreseeable consequences in the forum. *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 496 (5th Cir. 1974). Siskind, however, does not allege any act on the part of these individuals from which we can infer a reasonably foreseeable consequence occurring Texas.