# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00456-CV

**Avery Dennison Corporation and Rocal, Inc., Appellants**

**v.**

**Kiwa Chemical Industry Co., Ltd., Appellee**

**FROM THE DISTRICT COURT OF CONCHO COUNTY, 119TH JUDICIAL DISTRICT
NO. 3599, HONORABLE BEN WOODWARD, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

In 2001, Wayne Osborne, Inc., a Texas company, was awarded a construction project by the Texas Department of Transportation in Concho County. Osborne contracted with Lange Construction Company, Ltd., a Delaware company registered and authorized to do business in Texas, for the roadside signs required by the project. Lange contracted with Rocal, Inc., an Oklahoma company, for the sign materials. Rocal contracted with Avery Dennison Corporation, a foreign company doing business in Texas, for the reflective sheeting used in the signs, which Avery bought from Kiwa Chemical Industry Co., Ltd., a Japanese company, re-labeled as an Avery product, and sold to Rocal without modification.

In March 2002, Rocal sued five defendants, including Lange, alleging that it was owed payment for the signs it provided for the construction project. Lange cross-claimed against Rocal and sued Avery, alleging that the signs were rejected as defective. Avery and Rocal both sued

Kiwa, which filed a special appearance, arguing that it was not subject to the jurisdiction of the Texas courts. The trial court granted Kiwa's special appearance and dismissed it from the suit. Rocal and Avery appeal. We affirm the trial court's order.

## Standard of Review

In attempting to subject a nonresident defendant to jurisdiction in Texas, the plaintiff bears the initial burden of pleading sufficient allegations to satisfy the Texas long-arm statute. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 793 (Tex. 2002). The burden then shifts to the defendant to affirmatively negate all jurisdictional bases asserted by the plaintiff. *Id*. Whether a trial court properly granted or denied a special appearance is a question of law that we review de novo, *id.* at 794, and that determination is reviewable by interlocutory appeal. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (West Supp. 2004-05). In making a jurisdictional determination, the trial court may and should resolve necessary factual questions, *BMC Software*, 83 S.W.3d at 794, including whether the defendant engaged in tortious activity that foreseeably caused harm in Texas. *See Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 437 (Tex. 1982).

In determining whether the evidence is sufficient to support a trial court's factual determinations, we consider the entire record and conduct an ordinary sufficiency review, setting aside the trial court's finding only if it is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *In re Estate of King*, 244 S.W.2d 660, 661 (Tex. 1951). The trial court as fact-finder is the sole judge of witness credibility and the weight to be given to testimony, *Wyatt v. Wyatt*, 104 S.W.3d 337, 340 (Tex. App.—Dallas 2003, no pet.), and we will not disturb a trial court's resolution of evidentiary conflicts that turn on credibility determinations

2

or the weight of the evidence. *Benoit v. Wilson*, 239 S.W.2d 792, 796 (Tex. 1951). If a trial court does not issue findings of fact and conclusions of law when ruling on a special appearance, we will assume that the court made all necessary findings of fact that are supported by the evidence. *BMC Software*, 83 S.W.3d at 795. If the record includes the reporter's and clerk's records, those implied findings may be challenged for legal and factual sufficiency. *Id*. However, we will affirm the trial court's determination on any legal theory supported by the evidence. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

Texas courts may exercise personal jurisdiction over a nonresident defendant only if it is authorized by the Texas long-arm statute and it comports with constitutional guarantees of due process. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex. 1990). The Texas long-arm statute reaches as far as the federal Constitution permits and, therefore, our due process analysis under state law is consistent with the federal test. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991). To subject a nonresident defendant to personal jurisdiction in Texas, the following three requirements must be met: (1) the defendant must purposefully do some act or consummate some transaction in Texas, thus establishing minimum contacts with the forum; (2) the cause of action must arise from or be connected with that act or transaction, so as to support specific jurisdiction, or the contacts with Texas must be so continuing and systematic as to support general jurisdiction; and (3) the exercise of jurisdiction by Texas courts must not offend traditional notions of fair play and substantial justice. *Schlobohm*, 784 S.W.2d at 358.

In 1980, the Supreme Court held that a state may exercise personal jurisdiction over a nonresident defendant that "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980). However, it is not enough that it be merely foreseeable that the defendant corporation's products might find their way into the forum state. *Id*. at 297. In 1987, the Supreme Court split on the issue, with Justice O'Connor writing a plurality opinion arguing that "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987) (plurality opinion). Under Justice O'Connor's opinion, the nonresident defendant must take some action that would "indicate an intent or purpose to serve the market in the forum State" and must purposefully direct some action toward the forum. *Id*. In *CMMC v. Salinas*, the Texas Supreme Court declined to "take sides in the *Asahi* debate," but observed that Texas cases "suggest[] that we would follow Justice O'Connor's formulation of the stream-of-commerce rule in Texas." 929 S.W.2d 435, 439-40 (Tex. 1996); *see Michiana Easy Livin' Country, Inc. v. Holten*, No. 04-0016, 2005 Tex. LEXIS 420, at *19-20 (May 27, 2005) (citing *CMMC*, 929 S.W.2d at 440) ("we have noted that our cases appear to follow the 'additional conduct' standard" proposed by Justice O'Connor's plurality in *Asahi*); *see also Daimler-Benz Aktiengesellschaft v. Olson*, 21 S.W.3d 707, 723-24 (Tex. App.—Austin 2000, pet. dism'd w.o.j.) (nonresident corporation subject to jurisdiction due to distribution agreement that "directly align[ed] [Texas distribution company's] interests with [foreign company's] interest in maximizing the sales of its vehicles in the U.S.").

**Discussion**

Rocal argues that Texas courts may properly exercise specific jurisdiction over Kiwa Chemical under the "stream of commerce" doctrine and that subjecting Kiwa to jurisdiction in Texas would not offend traditional notions of fair play and substantial justice.

Kiwa is a Japanese company with no offices or representatives located in Texas. Kiwa's contacts with Avery were conducted through Avery's offices in Illinois. In 1999, Kiwa contracted with Avery to allow Avery "the exclusive right to market and distribute a certain brand of reflective sheeting in the United States" by repackaging it and selling it as an Avery product. Kiwa entered into other distribution agreements for the marketing of different Kiwa products in North America by companies other than Avery. There is no evidence that Kiwa representatives contacted persons or offices located in Texas or made direct contact of any kind with Texas. However, various email communications between Kiwa and Avery establish that Kiwa was aware that its sheeting material was being marketed by Avery for road construction projects throughout the United States, including projects in Texas. In April 2000, Kiwa inquired about "any development or progress on the Texas bids," and in June 2000, Kiwa "learned from [an Avery employee] that Avery was awarded the bids for the States of Texas and Missouri and the business will start in July."[1]

Kiwa's mere awareness that Avery hoped to win bids that would involve using the Kiwa product in Texas is not enough to satisfy due process, however; instead, Kiwa must have acted in some way so as to "purposefully avail[] itself of the privilege of" doing business in Texas.

---

[1] The record contains about ten other communications sent between April 2000 and September 2002 referring to bids in Texas.

5

*Michiana Easy Livin' Country*, 2005 Tex. LEXIS 420, at *14 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). In making this determination, we review Kiwa's contacts with Texas and ask whether they were purposeful and whether Kiwa benefitted from its availment of Texas's jurisdiction. *See id*. at *15-16.[2] In other words, Kiwa must have reached into Texas and created continuing relationships and obligations with Texas citizens, and it must have done more than simply anticipated financial benefits through a "collateral relation" to Texas.[3] *See id*. at *15, 25. We will not hale Kiwa into court in Texas due to Avery's unilateral activity. *See id*. at *14.

Assuredly, Kiwa was aware that its product would enter Texas through the stream of commerce. Communications between Kiwa and Avery specifically mentioned Texas contracts several times. However, those few references consist largely of information provided by Avery, updating Kiwa on projects in several states on which Avery had submitted bids, and amount to approximately twelve pages in a record of nearly 2000 pages of communications between the two companies. Kiwa has no offices, property, or employees in Texas and there is no evidence that Kiwa representatives have ever traveled to Texas or entered into any contracts in Texas. Kiwa itself did not contact anyone in Texas. Kiwa knew that its product would be used in Texas, but that alone does not amount to purposeful availment of the privilege of doing business in Texas. The fact that Avery

---

[2] *Compare CSR Ltd. v. Link*, 925 S.W.2d 591, 595-96 (Tex. 1996) (CSR sold product that was shipped directly to Houston; however, title passed in Australia and CSR did not participate in decision to ship to Texas, did not have offices, employees, bank accounts or property, pay taxes, or contract in Texas), *with Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 201 (Tex. 1985) (Kawasaki knew product would enter Texas, prepared inspection certificates showing Texas buyer, and maintained office in Texas that provided marketing and after-sale customer service).

[3] Appellants do not assert that jurisdiction is proper because Kiwa committed some kind of tort in Texas. *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.042(2) (West 1997).

6

hoped to use the sheeting in Texas did not affect its contract with Kiwa: "it is hard to imagine what possible benefits and protection" Kiwa gained from Texas law or how these nonresident parties "would have conducted [their] activities any differently if Texas had no law at all" or if the projects in question had been in another state. *Id*. at *24-25. Financial benefits accruing to Kiwa from its "collateral relation" to Texas and not arising "from a constitutionally cognizable contact" with Texas do not support the exercise of jurisdiction. *Id*. at *25. When we examine the quality of Kiwa's few contacts with Texas, *see American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 810 (Tex. 2002), Kiwa's relationship with Texas is too remote or attenuated for it to have reasonably expected to be haled into court here. *See Woodson*, 444 U.S. at 297. We hold that the trial court's determination that Kiwa, although aware that its product would enter Texas, did not perform "additional conduct" that would subject it to personal jurisdiction in Texas, *see Michiana Easy Livin' Country*, 2005 Tex. LEXIS, at *19, is not so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *See Estate of King*, 244 S.W.2d at 661. We affirm the trial court's granting of Kiwa's special appearance.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   July 7, 2005

7