**Reversed and Remanded and Opinion Filed September 15, 2023**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-22-00770-CV

**TTS, LLC, Appellant**
**V.**
**EVENFLOW, LLC, DAN MANSELLE, AND TRINITY LOGISTICS, INC.,**
**Appellees**

**On Appeal from the 429th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 429-05512-2021**

## MEMORANDUM OPINION

Before Justices Carlyle, Goldstein, and Kennedy
Opinion by Justice Goldstein

TTS, LLC, brings this interlocutory appeal of the trial court's order sustaining the amended special appearance filed by Trinity Logistics, Inc., and dismissing the claims against it. In two issues, TTS argues the trial court erred in concluding it lacked personal jurisdiction over Trinity and dismissing TTS' claims against Trinity including claims for violations of the Texas Uniform Trade Secrets Act (TUTSA). We reverse the trial court's order sustaining Trinity's amended special appearance and remand for further proceedings consistent with this opinion.

# FACTUAL AND PROCEDURAL BACKGROUND[1]

TTS, a Delaware limited liability company, based in Frisco, Texas, is a self-described third-party transportation and logistics company that provides and manages motor carrier brokerage services and a broad range of transportation services. Dan Manselle is a Florida resident doing business as Evenflow, L.L.C., a Florida limited liability company. Trinity Logistics, Inc., is a Delaware corporation and a direct competitor with TTS.

Customers retain TTS to find the optimal method of transportation, and TTS utilizes independent contractors like Evenflow, who then use TTS' confidential and proprietary information to formulate bids and logistics solutions. On June 30, 2018, TTS and Evenflow, through its sole owner and sole employee, Manselle, entered into a sales agent agreement. Under the agreement, Evenflow was appointed as a non-exclusive independent agent to market, sell and provide TTS services, for an initial five-year term. The agreement specified that:

> [t]he parties hereby irrevocably and unconditionally submits [*sic*] to the exclusive jurisdiction of any state or federal court sitting in Collin County, Texas, over any action, suit or proceeding arising out of or relating to this Agreement. . . . . [Evenflow] acknowledges and agrees that its performance under this Agreement is due and owing to [TTS] in Collin County, Texas, and that a substantial portion of the duties and obligations of the parties are to be performed in Collin County, Texas.

---

[1] The facts are derived from TTS' October 2021 Original Petition, the parties' motions, responses, replies and the evidentiary exhibits attached thereto.

On October 6, 2021, TTS filed its original petition asserting claims for declaratory judgment, breach of contract[2] against Evenflow and Manselle, tortious interference with an existing contract against Trinity, and violations of the Texas Uniform Trade Secrets Act against all defendants.

Trinity and Manselle filed special appearances. After an initial hearing, the trial court ordered jurisdictional discovery.[3] Trinity filed an amended special appearance, to which TTS filed its supplemental response with attached jurisdictional exhibits, and Trinity replied. The trial court held a second hearing on Trinity's special appearance and issued an order sustaining Trinity's amended special appearance. This interlocutory appeal followed.

## PLEADED BASES OF TEXAS JURISDICTION OVER TRINITY

TTS argues that the trial court has both general and specific personal jurisdiction over Trinity. The original petition alleges specific jurisdiction under the Texas long-arm statute, averring Trinity tortiously interfered with the contract between TTS and Evenflow, which contract was to be substantially performed in Texas, and that Trinity recruits Texas residents for employment inside and outside of Texas. TTS alleges general jurisdiction over Trinity because Trinity has

---

[2] TTS alleges three separate counts of breach of contract relative to non-compete obligations, non-solicitation obligations, and as to the affirmative obligation to use best commercial reasonable efforts to market and sell TTS services and to not use TTS' confidential and proprietary information on behalf of a competitor or to divert business away from TTS.

[3] Evenflow did not challenge jurisdiction. The trial court overruled Manselle's special appearance without prejudice to re-urge, and that order is not part of this appeal.

purposefully availed itself of the privileges and benefits of conducting business in Texas, is registered with the Texas Secretary of State to conduct business in Texas, and has operated one of its seven regional service centers in Euless, Texas, since 2008, with Texas employees, maintaining continuous and systematic contacts with Texas.

The petition[4] alleged that, around January 2020, a Trinity logistics agent recruiter began soliciting Evenflow and Manselle to serve as a sales agent for Trinity. Evenflow, acting through its owner Manselle took and utilized TTS' confidential and proprietary information, and the same was acquired by Trinity through recruitment and employment of Evenflow and Manselle. Manselle, for and on behalf of Evenflow, signed an independent contractor agency agreement with Trinity to act in the same sales role for Trinity as it was still contracted to perform for TTS. Evenflow, acting through its owner Manselle, worked for Trinity, "TTS's direct competitor, while contemporaneously working for TTS for two months [September 29-November 25, 2020] before informing TTS" and ultimately terminating the agreement on November 25, 2020. As part of Trinity's recruitment process, Manselle identified ten customers to be vetted, two of which were Texas-based

---

[4] In support of its allegations, the petition had 13 exhibits attached including the agreement at issue, correspondence, email communications, and a record of Manselle and Evenflow's sales for Trinity in October and November of 2020.

customers, along with TTS's confidential customer information and confidential credit arrangements.

## STANDARD OF REVIEW

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law that appellate courts review de novo. *See, e.g., Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018); *Steward Health Care System, LLC v. Saidara*, 633 S.W.3d 120, 125 (Tex. App.—Dallas, 2021, no pet.). When a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied. *Old Republic*, 549 S.W.3d at 558; *Saidara*, 633 S.W.3d at 125. When the appellate record includes the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency in the appropriate appellate court. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *Saidara* , 633 S.W.3d at 125-26. When the relevant facts in a case are undisputed, an appellate court need not consider any implied findings of fact and considers only the legal question of whether the undisputed facts establish Texas jurisdiction. *Old Republic*, 549 S.W.3d at 558.

The plaintiff bears the initial burden of pleading sufficient facts to bring a nonresident defendant within the reach of the Texas long-arm statute. *See Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). If the plaintiff pleads sufficient jurisdictional facts, the defendant bears the burden to negate all alleged

–5–

bases of personal jurisdiction. *Id.* Alternatively, the defendant can prevail by showing that even if the plaintiff's allegations are true, the evidence is legally insufficient to establish that personal jurisdiction over the defendant is proper. *See id*. at 659.

Although the trial judge acts as the factfinder and must resolve any factual disputes in the special-appearance evidence, the judge must accept as true any clear, direct, and positive evidence presented in an undisputed affidavit. *Forever Living Prods. Int'l, LLC v. AV Eur. GmbH*, 638 S.W.3d 719, 723 (Tex. App.—Dallas 2021, no pet.); *see also Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547 (Tex. 2009) (discussing circumstances under which evidence must be taken as true as a matter of law).

## TRINITY'S SPECIAL APPEARANCE

Trinity filed a special appearance asserting that it is a Delaware corporation with its principal place of business in Delaware; its Euless office "coordinates freight transportation in the region, not just in Texas"; the Euless office generates less than five percent of Trinity's revenue; and TTS did not contend that its claim arose from or related to activity in Trinity's Euless office. Attached to the special appearance was the affidavit of Greg Massey, vice president of agent development for Trinity. In addition to confirming that Trinity is incorporated in Delaware, has its principal place of business in Delaware, and operates a regional service center in Euless,

Texas, Massey's affidavit stated that the Euless service center has a manager and thirty-three employees and is "Trinity's only office in Texas."

In November 2021, TTS filed a response to Trinity's special appearance asserting that, since 2005, "Trinity has had a registered agent for service, been registered to do business, and has been 'doing business' and commencing lawsuits in Texas." TTS alleged Trinity's Texas regional service center is used as one of Trinity's "home bases" from which thirty-four employees solicit and conduct business with customers and transportation providers not only in Texas, but nationwide.

At the conclusion of the initial hearing, the trial court permitted jurisdictional discovery, after which Trinity filed an amended special appearance, TTS supplemented its response, and Trinty replied. Attached to the supplemental response were exhibits in support of TTS' assertions that Trinity leases property and pays personal property taxes in Texas, has substantial business activity in Texas, uses Texas as the origin state for shipping, and has "availed itself of the Texas courts as a plaintiff in suits against third parties" relative to business it conducts in Texas.

In May 2022, Trinity filed an amended special appearance asserting that no case-related act of Trinity occurred in Texas and that "this is not a case about recruiting a Texas employee; it's a case about recruiting an independent contractor based in Florida." TTS filed a supplemental response in which it argued Trinity is subject to specific jurisdiction in Texas because it directed its tortious conduct at

Texas with the intent of creating recurring contacts with Texas in the form of recurring Texas-based business involving both Texas-based customers and Texas-based shipments that Evenflow would, and did, solicit away from TTS and to Trinity. TTS alleged that, in fact, Trinity's tortious conduct did result in Trinity obtaining recurring Texas business "to the tune of $475,000 in the 12 month period between Trinity's tortious conduct and the commencement of this lawsuit."

Evenflow and Manselle's agreement with TTS provided that exclusive jurisdiction was set, and a substantial portion of the parties' duties and obligations were to be performed, in Collin County, Texas. TTS alleged that, in successfully recruiting Evenflow and Manselle to breach the agreement with TTS, "Trinity intentionally and tortiously poached hundreds-of-thousands of dollars of annual shipments that [sic] customers Evenflow serviced for TTS, much of which originated or terminated in Texas, and knowingly benefitted from Evenflow's and Manselle's theft of TTS's confidential and proprietary trade secrets, to the detriment of TTS, its Texas competitor." TTS supplemented its response with evidence of two Texas customers that Evenflow took from TTS to Trinity.

TTS averred that Trinity actively recruits and solicits Texas residents to become its employees and agents, and Trinity's successful recruitment of Evenflow and Manselle to serve as a Trinity sales agent underlies this case, as such recruitment tortiously interfered with TTS's contract with Evenflow, resulting in harm to TTS, a Texas-based company. Thus, TTS alleged, "Trinity's continuous and systematic

–8–

contacts with Texas 'relate to' TTS's claims, which is sufficient to establish specific jurisdiction." Since TTS' injuries "arise out of or relate to" Trinity's Texas substantial continuous and systematic activities, TTS argued, holding Trinity subject to specific jurisdiction in Texas in this case comports with due process.

TTS further asserted that holding Trinity subject to either general or specific jurisdiction in Texas would not offend the notions of fair play and substantial justice because Evenflow and Manselle had already submitted to jurisdiction in Texas for this case, and it would be no more burdensome on Trinity to have witnesses travel to Texas than it would be for them to travel to another state like Florida. Finally, TTS argued that considerations of convenience and efficiency weighed heavily in favor of subjecting Trinity to jurisdiction in this case because, at a minimum, TTS will litigate this case against Evenflow and Manselle in Texas, and it would be grossly inefficient to require TTS and Evenflow and Manselle to relitigate the same case a second time in another forum.

## ANALYSIS

Because it is dispositive of this appeal, we first address TTS' argument that the trial court erred in concluding it lacked personal jurisdiction over Trinity and dismissing TTS' claims against Trinity because Trinity is subject to specific personal jurisdiction.

Texas Rule of Civil Procedure 120a(3) states, "The court shall determine the special appearance on the basis of the pleadings, any stipulations made by and

between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony." TEX. R. CIV. P. 120a(3). The text of a response to a special appearance (as opposed to evidentiary attachments to a response) does not fall into any of these categories; it is not a pleading. *See* TEX. R. CIV. P. 45 ("Pleadings in the district and county courts shall (a) be by petition and answer"); *Saidara*, 633 S.W.3d at 127-128.

"Texas courts may assert in personam jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). The Texas long-arm statute provides:

> In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:
> (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
> (2) commits a tort in whole or in part in this state; or
> (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

TEX. CIV. PRAC. & REM. CODE § 17.042.

The Texas long-arm statute's broad doing-business language "allows the statute to reach as far as the federal constitutional requirements of due process will allow." *Moki Mac*, 221 S.W.3d at 575. Therefore, we only analyze whether Trinity's acts would bring Trinity within Texas' jurisdiction consistent with constitutional due process requirements. *Id.*

Under constitutional due-process analysis, personal jurisdiction is achieved when (1) the nonresident defendant has established minimum contacts with the forum state, and (2) the assertion of jurisdiction complies with "traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co. v Washington,* 326 U.S. 310, 316 (1945)). We focus on Trinity's activities and expectations when deciding whether it is proper to call Trinity before a Texas court. *Int'l Shoe Co.*, 326 U.S. at 316.

A defendant establishes minimum contacts with a state when it "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citing *Int'l Shoe Co.*, 326 U.S. at 319). "The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002) (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). A nonresident's contacts can give rise to either specific or general jurisdiction. *Id.*

Courts have recognized two types of personal jurisdiction: "general" jurisdiction and "specific" jurisdiction. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017). For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is

an equivalent place, one in which the corporation is fairly regarded as at home. *See id.* A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State. *See id.* But "only a limited set of affiliations with a forum will render a defendant amenable to" general jurisdiction in that State. *See id.*

Specific jurisdiction exists when (1) the defendant has "made minimum contacts with Texas by purposefully availing itself of the privilege of conducting activities [in the state]," and (2) the defendant's potential liability arose from or is related to those contacts. *In re Christianson Air Conditioning & Plumbing, LLC*, 639 S.W.3d 671, 679 (Tex. 2022) (orig. proceeding) (quoting *Moki Mac*, 221 S.W.3d at 576). To show purposeful availment, a plaintiff must prove that a nonresident defendant seeks a benefit, advantage, or profit from the forum market. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005)). Only the defendant's contacts are relevant, not the unilateral activity of another party or third person. *See id.* And those contacts "must be purposeful rather than random, fortuitous, or attenuated." *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 151 (Tex. 2013) (quoting *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338–39 (Tex. 2009)).

The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Saidara*, 633 S.W.3d at 126 (citing *Old Republic*, 549 S.W.3d at 559; *Moncrief Oil*,

414 S.W.3d at 149). In order to meet its burden, a plaintiff must show the act on which jurisdiction is predicated, not a prima facie demonstration of the existence of a cause of action. *Bruno's Inc. v. Arty Imports, Inc.*, 119 S.W.3d 893, 896–97 (Tex. App.—Dallas 2003, no pet.). This minimal pleading requirement is satisfied by an allegation that the nonresident defendant is doing business in Texas or committed tortious acts in Texas. *Saidara*, 633 S.W.3d at 126. If the plaintiff does not meet this burden, the defendant need only prove that it does not reside in Texas to negate jurisdiction. *Kelly*, 301 S.W.3d at 658–59; s*ee Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 438 (Tex. 1982).

Trinity's contacts with Texas were purposeful, not random, fortuitous or attenuated. Trinity is registered with the Texas Secretary of State and operates a regional service center in Euless, Texas, which employs a manager and thirty-three employees. The record reflects Trinity recruited and employed Evenflow and Manselle while both were still working for TTS, and during such time Manselle disclosed to Trinity TTS' confidential business information related to Texas customers and interfered with TTS' business in Texas. Trinity's regional service center in Texas permitted Trinity to capitalize on confidential and proprietary information concerning TTS' customers and business operations in Texas. In fact, in the twelve months following Trinity's appropriation of TTS' confidential business information, Trinity earned approximately $475,000 in recurring Texas-based business.

The foregoing also reflects that Trinity has sought a "benefit, advantage or profit in Texas." *Michiana*, 168 S.W.3d at 785. As previously stated, Trinity earned approximately $475,000 in recurring Texas-based business alleged to have been derived from Trinity's appropriation of TTS' confidential business information.

Finally, we conclude that there is a substantial connection between Trinity's contacts and the operative facts of this litigation based upon TTS' claims. TTS alleges Trinity tortiously interfered with its sales agent contract with Evenflow and Manselle, a contract that provided that performance and a substantial portion of the duties and obligations, such as non-compete and non-solicitation, occurred in Texas. Due to the tortious interference, Trinity acquired confidential and proprietary information, as well as two Texas-based customers, subjecting it to potential liability under TUTSA. Based upon the record before us, Trinity's contacts are sufficient to demonstrate that the alleged tort occurred at least in part in Texas.

On this record, we conclude Trinity has made minimum contacts with Texas by purposefully availing itself of the privilege of conducting activities in Texas and seeking a benefit, advantage, or profit from the Texas market to support specific jurisdiction. *See In re Christianson Air Conditioning & Plumbing, LLC*, 639 S.W.3d at 679; *Michiana*, 168 S.W.3d at 785. Moreover, we conclude Trinity's potential liability arose from or is related to those contacts. *In re Christianson Air Conditioning & Plumbing, LLC*, 639 S.W.3d at 679. Thus, TTS met its burden of pleading sufficient allegations to bring Trinity within the provisions of the Texas

long-arm statute and establish specific jurisdiction.  *See id.*; *Saidara*, 633 S.W.3d at 126.

The asserted jurisdiction also comports with "traditional notions of fair play and substantial justice."  *Moki Mac*, 221 S.W.3d at 575.  The record reflects that Trinity has a regional office in Texas and availed itself of the Texas judicial system for its own purposes, such that the burden on Trinity is minimal.  The base operative facts are contractually in Texas, giving Texas an interest in adjudicating the dispute, as well as forming the bases of the parties' interest in obtaining an efficient, convenient, and effective resolution of the controversy.   We conclude the assertion of jurisdiction over Trinity does not offend notions of fair play and substantial justice.

We sustain TTS' first issue to the extent we agree that the trial court erred in concluding it lacked specific personal jurisdiction over Trinity and dismissing TTS' claims against Trinity.  Because of our disposition of this issue, we need not further address TTS' issues.

## CONCLUSION

We reverse the trial court's order granting Trinity's special appearance and dismissing TTS' claims against Trinity and remand for further proceedings consistent with this opinion.

220770f.p05

/Bonnie Lee Goldstein//
BONNIE LEE GOLDSTEIN
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

TTS, LLC, Appellant

No. 05-22-00770-CV     V.

EVENFLOW, LLC, DAN
MANSELLE, AND TRINITY
LOGISTICS, INC., Appellees

On Appeal from the 429th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 429-05512-
2021.
Opinion delivered by Justice
Goldstein. Justices Carlyle and
Kennedy participating.

In accordance with this Court's opinion of this date, the trial court's order sustaining Trinity Logistics, Inc.'s amended special appearance is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellant TTS, LLC recover its costs of this appeal from appellees EVENFLOW, LLC, DAN MANSELLE, AND TRINITY LOGISTICS, INC.

Judgment entered this 15th day of September, 2023.