ACCEPTED
15-25-00082-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
10/24/2025 3:28 PM
CHRISTOPHER A. PRINE
CLERK



**KEN PAXTON**

ATTORNEY GENERAL OF TEXAS

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
10/24/2025 3:28:42 PM
CHRISTOPHER A. PRINE
Clerk

October 24, 2025

Christopher A. Prine                                    *Via File&Serve Texas*
Fifteenth Court of Appeals
William P. Clements Building
300 W. 15th Street, Suite 607
Austin, Texas 78701

Re:     Notice of Supplemental Authority, *State v. Arity 875, LLC*, (15-25-00082-CV)

Dear Mr. Prine,

Appellant, the State of Texas, submits this letter to give notice of new authority that may benefit the Court: *State v. Yelp, Inc.,* No. 15-24-00040-CV, 2025 WL 2936466 (Tex. App. [15th Dist.] Oct. 16, 2025) (attached as Exhibit 1). *Yelp* supports the State's position that Appellee Arity 875, LLC purposefully availed itself of Texas' jurisdiction by offering targeted advertisements to Texas consumers through its proprietary software installed on Texas devices. *See* State Br. at 39–41.

In *Yelp,* this Court reviewed a dismissal for lack of personal jurisdiction from Yelp, Inc., a California-based website operator. Yelp lacked a physical presence in Texas but derived "revenue from the sales of customizable location specific advertising." *Yelp*, 2025 WL 2936466 at *8. The Court found that the State demonstrated that Yelp did "substantial business" in Texas by alleging, in relevant part, that Yelp "purposefully direct[ed] tailored advertisements to Texas users" as well as "deriv[ed] revenue from the sales of customizable location specific advertising." *Id.* As a result, this Court found Texas had specific personal jurisdiction.

*Yelp* supports the State's position that Arity 875, LLC purposefully availed itself of Texas' jurisdiction by targeting specific drivers in Texas for tailored advertisements based on their personal geolocation data, and the insights derived from such data. *See* State Br. at 40. Like in *Yelp*, the State alleges that Arity 875, LLC

derives revenue from its purposeful presence in Texas through the sales of customizable, location-specific advertisements directed to Texas consumers. *Id.* Further, this case negates Arity 875, LLC's position that sales of targeted advertisement positions to third parties seeking to advertise to Texas consumers do not constitute purposeful availment. *Contra* Arity 875 Br. at 33.

Respectfully submitted,

*/s/ Richard R. McCutcheon*

Richard R. McCutcheon
Assistant Attorney General

cc: all counsel of record (via electronic filing)

# EXHIBIT 1

2025 WL 2936466
Only the Westlaw citation is currently available.

NOTICE: THIS OPINION HAS NOT BEEN RELEASED
FOR PUBLICATION IN THE PERMANENT
LAW REPORTS. UNTIL RELEASED, IT IS
SUBJECT TO REVISION OR WITHDRAWAL.

Court of Appeals of Texas (15th Dist.).

The STATE of Texas, Appellant
v.
YELP, INC., Appellee

NO. 15-24-00040-CV
|
Opinion filed October 16, 2025

On Appeal from the 335th District Court, Bastrop County,
Texas, Trial Court Cause No. 2519-335, Honorable Reva
Towslee-Corbett, Judge

**Attorneys and Law Firms**

Catherine Lewis Robb, Laura Lee Prather, Austin, Michael J.
Lambert, William R. Pillifant, for Appellee.

Abigail E. Smith, Rob Farquharson, Scott Froman, for
Appellant.

Before Chief Justice Brister and Justices Field and Farris.

**OPINION**

April Farris, Justice

**\*1** Yelp, Inc. filed a special appearance in response to
the State's petition seeking civil penalties, damages, and
injunctive relief for alleged violations of the Deceptive
Trade Practices Act. The trial court granted Yelp's special
appearance and dismissed the State's case. On appeal, the
State argues that this dismissal was erroneous because the
State established both general and specific jurisdiction over
Yelp in Texas. We hold that the State did not plead facts
establishing general jurisdiction over Yelp, but the State has
established specific jurisdiction. Consequently, we reverse
the trial court's order of dismissal and remand the case for
adjudication on the merits.

**BACKGROUND**

Yelp is an internet-based Delaware corporation with its
principal place of business in San Francisco, California. Yelp
essentially operates as an online "yellow pages," [1] providing
consumers in search of a service or product with lists of
businesses that match the user's specifications, as well as
custom location-targeted ads, paid for by businesses. The
consumer is then able to either book a reservation or purchase
a product in some cases. Consumers can post reviews about
their experience with those businesses, subject to moderation
by Yelp. Other consumers using Yelp are then able to read the
reviews. If a consumer books an appointment or reservation,
or purchases a product, Yelp generally derives revenue from
these services. In 2009, Yelp registered to conduct business
in Texas as a foreign, for-profit corporation. Yelp listed its
express purpose for transacting business in Texas as "Internet
Advertising."

Following the leak of the United States Supreme
Court's decision in Dobbs v. Jackson Women's Health
Organization, 597 U.S. 215, 142 S.Ct. 2228, 213 L.Ed.2d
545 (2022), Yelp CEO Jeremy Stoppelman urged business
leaders to use their "platform and influence" to help protect
reproductive rights. Three months later, in August 2022, Yelp
posted a consumer notice on the Yelp business pages of
Crisis Pregnancy Centers across the nation. The notice stated,
"This is a Crisis Pregnancy Center. Crisis Pregnancy Centers
typically provide limited medical services and may not have
licensed medical professionals onsite."

By letter dated February 7, 2023, twenty-four state attorneys
general, including Texas Attorney General Paxton, demanded
that Yelp remove the notice and "stop discriminating" against
Crisis Pregnancy Centers. The next day, Yelp responded by
providing sources in support of its notice, but Yelp also
revised the notice to address the concerns raised in the letter.
The revised notice stated, "This is a Crisis Pregnancy Center.
Crisis Pregnancy Centers do not offer abortions or referrals
to abortion providers."

**\*2** On September 28, 2023, the State sued Yelp in Bastrop
County, asserting that Yelp violated the Deceptive Trade
Practices Act by misleading Texas consumers about the
availability of medical services at Crisis Pregnancy Centers.
In response, Yelp filed a special appearance, arguing that the
trial court lacked personal jurisdiction because (1) Yelp, as a

nonresident, lacks sufficient minimum contacts with Texas to demonstrate purposeful availment of the Texas forum; (2) the State's Deceptive Trade Practices claim does not arise from Yelp's contacts with Texas; and (3) the exercise of jurisdiction over Yelp would offend traditional notions of fair play and substantial justice.

The State filed a response to the special appearance asserting that Yelp had extensive contacts with Texas, which gave rise to both general and specific jurisdiction. The State also asserted that Yelp had consented to general jurisdiction by registering to do business in Texas. The trial court granted Yelp's special appearance and dismissed the case with prejudice. This appeal followed.

## ANALYSIS

In two issues, the State contends that the trial court erred in granting Yelp's special appearance because (1) Yelp consented to general jurisdiction in Texas as a condition of registering to do business in the state; and (2) Yelp is subject to specific jurisdiction in Texas because it purposefully availed itself of the Texas forum, and the State's claims are related to those purposeful contacts with Texas.

### I. Standard of Review

A nonresident defendant is subject to the personal jurisdiction of Texas courts if (1) the Texas long-arm statute authorizes the court to exercise jurisdiction, and (2) exercising jurisdiction does not violate state and federal constitutional due process guarantees. *LG Chem Am., Inc. v. Morgan*, 670 S.W.3d 341, 346 (Tex. 2023) (citing Tex. Civ. Prac. & Rem. Code §§ 17.041–.045); *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010). The requirements of the long-arm statute "are satisfied if an assertion of jurisdiction accords with federal due-process limitations." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007). Personal jurisdiction "is consistent with due process 'when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.' " *Kelly*, 301 S.W.3d at 657 (quoting *Moki Mac*, 221 S.W.3d at 575).

The nonresident defendant's forum-state contacts can give rise to two types of personal jurisdiction—general jurisdiction and specific jurisdiction. *Moki Mac*, 221 S.W.3d at 575. General jurisdiction arises when a defendant's contacts with the forum state are so "continuous and systematic" that the defendant is "essentially at home." *State v. Volkswagen Aktiengesellschaft*, 669 S.W.3d 399, 412 (Tex. 2023) (quoting *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 8 (Tex. 2021)). General jurisdiction permits courts to "render a binding judgment against a defendant even if the plaintiff's claims neither arise from activities conducted in the forum state nor 'relate to the forum [s]tate or the defendant's activity there.' " *Id.* (alteration in original) (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358, 141 S.Ct. 1017, 209 L.Ed.2d 225 (2021)). If general jurisdiction is established, the cause of action "may concern events and conduct anywhere in the world," subject to certain limits. *Id.*

Courts can exercise specific jurisdiction over a nonresident defendant, when (1) the defendant engages in some act by which it purposefully avails itself of the privilege of conducting activities within the state and (2) the plaintiff's claims arise out of or relate to those forum contacts. *LG Chem Am.*, 670 S.W.3d at 347. Purposeful availment and relatedness are "two co-equal components." *Id.* (quoting *Moki Mac*, 221 S.W.3d at 579). There must be an appropriate "nexus between the nonresident defendant, the litigation, and the forum." *Moki Mac*, 221 S.W.3d at 579. The plaintiff "must demonstrate a 'substantial connection' between the defendant's contacts and the operative facts of the litigation." *LG Chem Am.*, 670 S.W.3d at 347 (quoting *Moki Mac*, 221 S.W.3d at 585).

**\*3** Whether a court has personal jurisdiction over a party is a question of law that we review de novo. *Id.* at 346. When the trial court does not issue findings of fact and conclusions of law, as is the case here, "we presume all factual disputes were resolved in favor of the trial court's decision unless they are challenged on appeal." *Mehta v. State ex rel. Ahmed*, 716 S.W.3d 186, 191 (Tex. App.—15th Dist. 2025, no pet.) (quoting *Luciano*, 625 S.W.3d at 8).

### II. The State Did Not Plead Allegations Sufficient to Establish General Jurisdiction.

In the State's first issue, the State asserts that Yelp consented to general jurisdiction in Texas as a condition of registering to do business in the state, citing *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 143 S.Ct. 2028, 216 L.Ed.2d 815 (2023) and Section 9.203 of the Texas Business Organizations Code. In *Mallory*, the United States Supreme Court addressed a Pennsylvania statute requiring all corporations that registered to do business in Pennsylvania to consent to personal jurisdiction in Pennsylvania in exchange for status as a foreign corporation. *Mallory*, 600 U.S. at 126–27, 143 S.Ct. 2028. The Supreme Court determined that this statute—which conferred general personal jurisdiction on Pennsylvania courts over registered foreign corporations—did not violate the U.S. Constitution's Due Process Clause. *Id.* at 146, 143 S.Ct. 2028.

The State argues that Section 9.203 of the Texas Business Organizations Code functions just like the Pennsylvania statute in *Mallory*, making every foreign corporation consent to personal jurisdiction in Texas as a condition of registering as a foreign corporation. That provision states, in relevant part:

> in any matter that affects the transaction of intrastate business in this state, a foreign entity and each member, owner, or managerial official of the entity is subject to the same duties, restrictions, penalties, and liabilities imposed on a domestic entity to which it most closely corresponds or on a member, owner, or managerial official of that domestic entity.

Tex. Bus. Orgs. Code § 9.203.

Yelp disputes that the Texas Business Organizations Code vests Texas courts with general jurisdiction over all foreign corporations registered in Texas. Regardless, Yelp argues that we cannot consider this statute as a basis for conferring general jurisdiction because the State did not mention either Section 9.203 or *Mallory* in its live pleadings. Rather, the State waited until its response to Yelp's plea to the jurisdiction to assert, for the first time, that Yelp consented

to general jurisdiction in Texas by registering to do business in Texas. On appeal, Yelp argues that although a response to a special appearance may contain evidence supporting the petition's allegations, the allegations on which the plaintiff bases the exercise of jurisdiction must be in the petition. The State argues that it was sufficient to raise these sources of jurisdiction in its response to Yelp's plea to the jurisdiction, and that the State need not have pleaded either *Mallory* or Texas Business Organizations Code Section 9.203 as the basis for an exercise of general jurisdiction.

We agree with Yelp. The Rules of Civil Procedure require courts to determine a special appearance on the "*basis of the pleadings*, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony." Tex. R. Civ. P. 120a(3) (emphasis added). The Texas Supreme Court has "consistently held that the plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute." *Kelly*, 301 S.W.3d at 658; *LG Chem Am.*, 670 S.W.3d at 346 (noting that for a special appearance, "[t]he plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of the long-arm statute."). "The nonresident 'defendant then bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff,'" an exercise that typically requires evidence. *Mehta*, 716 S.W.3d at 191 (quoting *LG Chem Am.*, 670 S.W.3d at 346). But when the Plaintiff's pleadings fail to contain facts bringing the defendant within the reach of the long-arm statute, then the "defendant need only prove that it does not live in Texas to negate jurisdiction." *Kelly*, 301 S.W.3d at 659.

**\*4** Under this burden shifting framework, the plaintiff's pleadings set the boundaries for what types of evidence and arguments may be offered either for or against jurisdiction. Although the pleadings themselves may not be dispositive of jurisdiction when the defendant contests those pleadings with evidence, the "additional evidence merely supports or undermines the allegations in the pleadings." *Id.* at 658 n.4. In other words, "[b]ecause the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Id.* at 658. If the plaintiff's evidence is not within the scope of the pleadings' factual allegations,

then "the plaintiff should amend the pleading to include the necessary factual allegations." *Id.* at 659.

We hold that *Kelly* controls here and compels the conclusion that the State must meet its initial burden on a special appearance by pleading in its petition sufficient allegations to invoke jurisdiction. *See id.* at 658 (requiring the factual bases supporting the exercise of jurisdiction to be in the petition). We are aware of contrary authority in which other courts of appeals have concluded that Rule 120a contemplates considering jurisdictional allegations made in the plaintiff's response, but these decisions are not consistent with *Kelly's* reasoning. [2]

We are not alone in interpreting *Kelly* to require the allegations supporting jurisdiction to be included in the petition. The en banc Fifth Court of Appeals has reached the same conclusion, holding that "[t]he plaintiff's response to the special appearance may contain evidence supporting the petition's jurisdictional allegations, but that evidence must be consistent with the allegations in the petition." *Steward Health Care System LLC v. Saidara*, 633 S.W.3d 120, 129 (Tex. App.—Dallas 2021, no pet.) (en banc). Interpreting *Kelly*, the *Steward* court held that "the allegations on which the plaintiff bases the exercise of jurisdiction must be in the petition," as "nothing in the supreme court's precedent suggests the defendant must negate jurisdictional allegations appearing only in the response to the special appearance." *Id.* The Court resolved that "[t]o be consistent with *Kelly*, we conclude that the plaintiff must meet its burden on a special appearance by pleading, *in its petition*, sufficient allegations to invoke jurisdiction under the Texas long-arm statute." *Id.* (overruling the court's prior opinions to the extent that they conflicted with this conclusion). Because the jurisdiction-conferring allegations appeared only in the plaintiffs' response to the plea to the jurisdiction and not their live pleadings, the *Steward* Court held that the plaintiffs had not pleaded sufficient allegations to bring the defendant within the provisions of the Texas long-arm statute. *Id.* at 131.

**\*5** Since *Steward* issued, many of our sister intermediate courts have followed *Kelly* in requiring defendants to

negate only those factual bases for personal jurisdiction that are stated in the plaintiff's pleadings—not those asserted elsewhere, such as in a response to a plea to the jurisdiction. *See, e.g., Texas Bank & Tr. v. California Coast Credit Union*, No. 12-24-00149-CV, 2025 WL 657280, at \*10 (Tex. App. —Tyler Feb. 28, 2025, no pet.) (mem. op.) (refusing to credit an indemnification agreement as a basis for personal jurisdiction where the plaintiff never amended its pleadings to invoke that agreement as a basis for jurisdiction); *Witty Yeti, LLC v. Plummer*, No. 04-22-00075-CV, 2022 WL 3046942, at \*5 (Tex. App.—San Antonio Aug. 3, 2022, no pet.) (mem. op.) ("If the plaintiff fails to plead facts to bring the defendant within the reach of the court's jurisdiction, the defendant need only prove that it does not live in Texas to negate personal jurisdiction. Once the plaintiff has met its burden to plead sufficient jurisdictional allegations, the burden shifts to the defendant to negate all potential bases for personal jurisdiction that exist in the plaintiff's pleadings.") (citing *Kelly*, 301 S.W.3d at 658–59). The Texas Business Court, too, has followed *Kelly* on this point. *Riverside Strategic Cap. Fund I, L.P. v. CLG Investments*, LLC, No. 25-BC01B-0006, 2025 WL 2419620, at \*7 ¶ 45 (Tex. Bus. Ct. Aug. 19, 2025) ("Riverside's arguments and evidence opposing the special appearance do not save it. The court considers only allegations in plaintiffs' petition—not allegations made in its response—and considers additional evidence only to the extent it supports or undermines those allegations.") (citing *Kelly*, 301 S.W.3d at 658–59, and *Steward*, 633 S.W.3d at 129). We join these courts in refusing to consider factual grounds for jurisdiction that are not asserted in the plaintiff's pleadings.

In this case, the State did not raise its argument that the Texas Business Organizations Code created jurisdiction by consent until the State filed its response to Yelp's plea to the jurisdiction. This ground for jurisdiction does not appear in the pleadings, so we do not consider it. [3]

We instead review the factual assertions in the pleadings to determine whether the State met its burden of pleading sufficient allegations to establish that Yelp's continuous and systematic contacts render it essentially "at home" in Texas. *See Volkswagen*, 669 S.W.3d at 412. The State's original petition alleged that Yelp is a Delaware corporation with its principal place of business in California. The State provided that Yelp could be served with process by serving its registered agent located in Dallas, Texas. The State did

not plead that Yelp consented to general jurisdiction by registering to do business in Texas. Nor did the State plead anything about 🚩*Mallory* or Texas Business Organizations Code Section 9.203. The State relied on the affidavits, discovery materials, and other evidence attached to its response. Attached to the State's response was a copy of Yelp's application to register as a foreign non-profit in Texas. This evidence, however, was not in support of any pleading that Yelp had consented to general jurisdiction. *See Certain Underwriters at Lloyd's, London v. Henry Vogt Mach. Co., Inc.*, 712 S.W.3d 909, 919 (Tex. App.—Houston [14th Dist.] 2025, no pet.) ("These allegations appear to address service of process, not consent to personal jurisdiction.").

**\*6** Because the State did not plead sufficient allegations to support its theory of Yelp's consent to general jurisdiction, we conclude the State failed to establish general jurisdiction.[4] We overrule the State's first issue.

### III. The State Met Its Burden to Plead and Establish Specific Jurisdiction.

In its second issue, the State contends the trial court erred in granting Yelp's special appearance because the State has pleaded sufficient facts to demonstrate specific personal jurisdiction over Yelp in Texas. According to the State, Yelp purposefully availed itself of the Texas forum and the State's claims are related to those purposeful contacts.

Specific jurisdiction, as opposed to general jurisdiction, covers defendants who are less intimately connected with the forum state, but with respect to limited kinds of claims. 🚩*Volkswagen*, 669 S.W.3d at 412. Texas courts may exercise personal jurisdiction over a nonresident if the Texas long-arm statute authorizes the exercise of personal jurisdiction and the exercise is consistent with federal and state constitutional due-process guarantees. 🚩*Moki Mac*, 221 S.W.3d at 574; *see also* Tex. Civ. Prac. & Rem. Code § 17.042 (Texas long-arm statute). The Texas Supreme Court has consolidated these inquiries, holding that the Texas long-arm statute's broad language allows Texas courts to exercise personal jurisdiction as far as the Due Process Clause of the Federal Constitution permits. 🚩*Volkswagen*, 669 S.W.3d at 412; 🚩*BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). The requirements of the Texas long-arm statute thus are fulfilled if an assertion of personal jurisdiction

is consistent with federal due-process limitations. 🚩*Moki Mac*, 221 S.W.3d at 575.

Federal due-process requirements are satisfied when the nonresident defendant has established minimum contacts with the forum state and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *See* 🚩*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); 🚩*Volkswagen*, 669 S.W.3d at 412. Minimum contacts exist when the nonresident defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. 🚩*Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005).

There are three components to the "purposeful availment" inquiry. 🚩*Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 67 (Tex. 2016). First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. 🚩*Id.* Second, the contacts relied upon must be purposeful rather than random, fortuitous, isolated, or attenuated. 🚩*Id.* Third, the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. 🚩*Id.* Specific jurisdiction is established if the claims in question arise from or relate to the defendant's purposeful contacts with Texas. *See* 🚩*Volkswagen*, 669 S.W.3d at 412–13.

**\*7** In conducting a specific-jurisdiction analysis, we focus on the relationship among the defendant, the forum, and the litigation. 🚩*Kelly*, 301 S.W.3d at 658. For a nonresident defendant's contacts with Texas to support an exercise of specific jurisdiction, there must be a substantial connection between the defendant's contacts with the forum state and the operative facts of the litigation. 🚩*Moki Mac*, 221 S.W.3d at 585. The operative facts are those facts that would be the focus of a trial on the merits. *Law Firm of Donald Wochna, LLC v. Am. Frontier Mgmt.*, No. 03-17-00489-CV, 2018 WL 1614782, at \*4 (Tex. App.—Austin April 4, 2018, pet. ref'd) (mem. op.).

### A. The State Met its Burden to Sufficiently Plead Specific Jurisdiction.

The Texas long-arm statute broadly permits a court to exercise jurisdiction over a foreign corporation who does "business in this state." Tex. Civ. Prac. & Rem. Code § 17.042. The State's original petition alleged that Yelp is "a company" that maintains a "platform in which users can connect with businesses by publishing online public reviews." Crisis Pregnancy Centers, which "are located throughout the State of Texas, including Bastrop County," are one such business. The State alleged that Yelp "violated Texas law" by posting a false, misleading, and disparaging disclaimer on the Yelp business pages of every pregnancy center across the nation. This allegation included Crisis Pregnancy Centers in Texas because the State alleged that (1) the "transactions forming the basis of this suit occurred in Bastrop County, Texas" and (2) Yelp "has done business in Bastrop County, Texas."

These doing-business pleadings were sufficient to allege that Yelp is subject to specific jurisdiction under Texas's long-arm statute. *See* Steward, 633 S.W.3d at 126 (plaintiff's pleading requirement is satisfied by an allegation that the nonresident defendant is doing business in Texas).

**B. The Asserted Contacts are Sufficient to Show that Yelp Purposely Availed Itself of the Privilege of Conducting Activities in Texas.**

Once the State satisfied its initial burden to plead allegations sufficient to bring Yelp within the reach of Texas's long-arm statute, the burden flipped to Yelp to negate all bases of personal jurisdiction in the State's pleading. *Kelly,* 301 S.W.3d at 658. Here, the State pleaded that Yelp is an internet-based company that "features a platform in which users can connect with businesses by publishing online public reviews of those businesses on a publicly accessible page that Yelp maintains." According to Yelp, its platform contains "trusted local business information, photos and review content." Yelp placed a disclaimer on its platform on the pages of Crisis Pregnancy Centers across the nation, including in Bastrop County.

In Yelp's special appearance, Yelp argued that there was no basis for exercising personal jurisdiction because Yelp is a California-based website operator with no offices in Texas. Yelp argued the State failed to establish general or specific jurisdiction because the State failed to allege the disclaimer was purposely directed at Texas, only that Yelp targeted Crisis Pregnancy Centers nationwide. Yelp asserted it "owns and operates a local search website (available at Yelp.com), a mobile website, and related mobile applications that allow users across the country to share information about their communities" and maintained no technology infrastructure in Texas. Yelp further asserted all decisions concerning the disclaimer for Crisis Pregnancy Centers were made in California.

**\*8** The State responded with evidence including (1) images of Yelp's webpages; (2) copies of news articles regarding Yelp; (3) Yelp's Texas Secretary of State filings; (4) publications of Yelp's terms of service, social media posts, letter to shareholders, and investor presentations; and (5) Yelp's discovery responses.

Due to its internet-based business model, Yelp has no need for a physical presence in Texas—or in most other states for that matter. However, it hires and retains remote employees in Texas. Nevertheless, the record reflects that Yelp derives benefits in the form of revenue from the sales of customizable location specific advertising, and from any reservations or other purchases made through Yelp. The State established through evidence in support of its response that Yelp does substantial business in Texas, accesses and generates profits from Texans who book reservations or purchase items through Yelp pages, and purposefully directs tailored advertisements to Texas users. The State asserted that when a consumer searches Yelp's website Yelp uses the consumer's location to show business pages for local Texas providers within the consumer's geographic area. Yelp also tracks consumers' keyword searches and uses that information to facilitate paid advertisements.

The State cites *Siskind v. Villa Found. for Educ., Inc.,* 642 S.W.2d 434 (Tex. 1982) in support of its argument that Yelp purposely availed itself of jurisdiction in Texas. In *Siskind,* the Texas Supreme Court held that exercise of personal jurisdiction was proper over Villa—a school for troubled children located in Arizona that solicited business in Texas. *Id.* at 435, 437. Siskind, a Texas resident, sued Villa on the theory that he had paid tuition for his son to attend Villa with the understanding from the modified enrollment contract that Siskind would be reimbursed if his son left during the school year. *Id.* at 435–36. Villa expelled Siskind's son and refused to refund the tuition. *Id.* at 435. Siskind sued the school in Texas for breach of contract, misrepresentation, and violation of the Deceptive Trade Practices Act. *Id.* at 435–36.

In holding that Villa had personally availed itself of the Texas forum, the ⚑ *Siskind* Court noted that a significant number of Villa's students were Texas residents, and that the school advertised in the El Paso, Houston, and Lubbock telephone directories as well as solicited business in a number of national publications that were circulated in Texas. ⚑ *Id. at 435.* The Supreme Court held that Villa's advertisements, "in conjunction with its practice of mailing informational packets, applications for admission, invitations to re-enroll, and enrollment contracts to Texas residents," indicated that the school had affirmatively sought business in Texas. ⚑ *Id. at 436.*

Here, Yelp does not need to send brochures through the mail or advertise in conventional telephone directories, but seeks consumers by sending targeted advertising based on where those consumers live. Yelp also engaged in additional conduct, such as creating independent pages for different cities in Texas. The State introduced evidence of Yelp pages advertising medical practices in Austin in addition to images of Yelp pages targeted to Dallas, Austin, Houston, and San Antonio. While the method of delivery is not the same as in ⚑ *Siskind*, like the defendant in ⚑ *Siskind*, Yelp actively solicited business in Texas.

**\*9** Yelp makes two other arguments for why it did not purposefully avail itself of the privilege of doing business in Texas. First, Yelp argues that it purposefully avoided the privilege by including a forum selection clause and choice-of-law provision in its online user agreement. A defendant may "purposefully avoid a particular forum by structuring its transactions in such a way as to neither profit from the forum's laws" nor subject itself to the forum's jurisdiction. ⚑ *Moki Mac*, 221 S.W.3d at 575 (citing ⚑ *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). In support of this argument, Yelp attached to its special appearance a fifteen-page user agreement that required any claim, cause of action, request for relief, or dispute that might arise between the consumer and Yelp to be resolved by arbitration. Any claims that could not be arbitrated were required to be brought in courts located in San Francisco County, and California law would govern the terms of the agreement.

In ⚑ *Michiana*, the defendant cited a similar forum-selection clause as a basis for granting its special appearance. ⚑ 168

S.W.3d at 792. The Texas Supreme Court rejected the argument, holding that a forum-selection clause does not foreclose the possibility that the defendant had minimum contacts elsewhere. ⚑ *Id.* As the Supreme Court explained, the clause generally "operates as consent to jurisdiction in one forum, not proof that the Constitution would allow no other." ⚑ *Id.* Regardless of the clause's enforceability in this case (an issue not before us), it does not prevent the exercise of personal jurisdiction in Texas.

Second, Yelp argues that it has not purposefully availed itself of the forum because it did not make any money from the representations contained in its Consumer Notice. It is undisputed that Yelp does not allow any business categorized as a Crisis Pregnancy Center to purchase any services offered by Yelp, whether the business is located in Texas or elsewhere in the United States. Further, Yelp does not conduct any trade or commerce with any business that is categorized as a Crisis Pregnancy Center, whether in Texas or anywhere else in the United States, and makes no money off Crisis Pregnancy Centers, directly or indirectly. Yelp argues that rather than seek any advantages from Texas, Yelp posted the Consumer Notice to better inform consumers across the country about businesses that they may choose to visit.

The fact that Yelp did not profit from the Consumer Notice itself does not preclude a finding of personal jurisdiction based on Yelp's availment of the Texas forum. Neither the Texas Supreme Court nor the U.S. Supreme Court has conditioned a personal availment finding on whether the defendant profited from the communication directed toward the forum. The State is suing Yelp on a Deceptive Trade Practices claim, a claim for which no financial loss need be shown in order to recover. *Mother & Unborn Baby Care of N. Tex., Inc. v. State*, 749 S.W.2d 533, 538 (Tex. App. —Fort Worth 1988, writ denied) ("It is immaterial whether appellants provided a service in exchange for money; the statute as a whole supports the conclusion that transfer of valuable consideration is not necessary."). Moreover, the State has raised a fact issue on whether Yelp might make money from data harvesting on user searches for Crisis Pregnancy Centers.

We conclude the State's allegations coupled with the evidence attached to its response are sufficient to establish that Yelp purposefully availed itself of the privilege of conducting business in Texas, and that Yelp did not negate the State's allegations. Yelp's business contacts with Texas are thus

not the kinds of "random, isolated, or fortuitous" ones that will save a company from personal jurisdiction in a State notwithstanding its contacts with it. *Ford Motor Co.*, 592 U.S. at 359, 141 S.Ct. 1017 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)). Rather, Yelp "deliberately 'reached out beyond' its home" by appending the Consumer Notice to Crisis Pregnancy Centers in Texas. We therefore turn to the question of whether the State established a substantial connection between Yelp's contacts and the operative facts of the litigation.

### C. Yelp's Contacts with Texas are Related to the Operative Facts of the Litigation.

**\*10** The State's Deceptive Trade Practices claim is premised on allegations that Yelp directly appended misleading statements about Texas Crisis Pregnancy Centers to the business pages of over 200 Texas Crisis Pregnancy Centers, including in the district where this suit was brought—Bastrop County. Yelp responds that the relevant decisions at issue were made by Yelp employees in California. Those decisions included whether to create the Crisis Pregnancy Center business category and whether to place disclaimers on Crisis Pregnancy Centers. The United States Supreme Court has recognized that the relatedness inquiry, however, does not require a causal connection. *See* *Ford Motor Co.*, 592 U.S. at 361–62, 366 (holding that car manufacturer was subject to specific jurisdiction in Montana and Minnesota on claims for car-wreck injuries suffered there because manufacturer had advertised, sold, and serviced the relevant car models "in both States for many years," even though the manufacturer did not sell the specific cars involved in the litigation in those states). Instead, the relatedness inquiry requires only that the suit arise out of or relate to the defendant's contact with the forum. *Id.* at 362; *see* *Volkswagen*, 669 S.W.3d at 431 (determining that "[r]elationships may 'support jurisdiction without a causal showing' even when the litigation merely relates to the defendant's forum contacts.") (quoting *Ford Motor Co.*, 592 U.S. at 362, 141 S.Ct. 1017); *Luciano*, 625 S.W.3d at 17 (refusing to condition specific jurisdiction on a "strict causal connection," and instead finding it sufficient that SprayFoam "intended to serve a Texas market for the insulation that the Lucianos allege injured them in this lawsuit.").

That inquiry is satisfied here. Here, the State alleged that Yelp, using location data, appended a misleading disclaimer to the business pages of over 200 Crisis Pregnancy Centers in Texas and "divert[ed] consumers from seeking [Crisis Pregnancy Centers'] services in favor of other facilities that lacked the misleading disclosure." Accordingly, the State's claim "arises from an injury which occurred in the forum state"—which is a "relevant part of the relatedness prong of the analysis." *Luciano*, 625 S.W.3d at 17. [5]

Yelp makes two responses for why the relatedness prong nevertheless is unsatisfied here. First, Yelp responds that the required relatedness nexus is not satisfied because the disclaimer at the heart of the State's claim was published nationwide and not sent specifically to any Texas consumer. According to Yelp, because Yelp targeted Crisis Pregnancy Centers everywhere, it cannot be said to have targeted Texas specifically. We disagree. The fact that Yelp targeted Crisis Pregnancy Centers outside Texas as well as in Texas does not preclude us from finding the relatedness inquiry to be satisfied. The Texas Supreme Court recently rejected an analogous argument, holding that a "defendant need not single Texas out in some unique way to satisfy constitutional dictates." *Volkswagen*, 669 S.W.3d at 420. Rather, the "critical inquiry is whether a nonresident defendant has established sufficient contacts with Texas—not whether those contacts are materially different from its contacts with other states." *Id.* at 421. A contrary rule would create perverse incentives, encouraging actors to commit harms everywhere to avoid being haled into court anywhere. *See* *id.* Here, as in *Volkswagen*, "there was no happenstance to [Yelp's] contacts with Texas." *Id.* at 420. Yelp's conduct reflects intent to avail itself of several markets nationwide, including Texas. Yelp's contacts in Texas are related to the operative facts of the litigation; the fact that Yelp did not single out Texas does not defeat specific jurisdiction. *Id.*

Second, Yelp argues that the State's primary authorities do not involve internet transactions, and that this distinction compels a different result. *See* *Ford*, 592 U.S. at 366 n.4, 141 S.Ct. 1017 (excluding internet transactions from the product-liability case analysis because internet transaction cases "may raise doctrinal questions of their own."). According to Yelp, although Ford rejected a "strict causal theory" of relatedness, "it did not say that 'anything goes.' " *Johnson*

*v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 324 (5th Cir. 2021) (quoting 🚩 *Ford Motor Co.*, 592 U.S. at 362, 141 S.Ct. 1017). Yelp invokes the Fifth Circuit's directive in 🚩 *Johnson* that "a plaintiff must link the defendant's *suit-related* conduct to the forum. Mere market exploitation will not suffice." 🚩 *Id.* In 🚩 *Johnson*, the Fifth Circuit held that merely making a website "that's visible in Texas, of course, does not suffice" to confer specific jurisdiction. 🚩 *Id.* at 320; *see* 🚩 *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 785 (5th Cir. 2021) ("Merely running a website that is accessible in all 50 states, but that does not specifically target the forum state, is not enough to create the 'minimum contacts' necessary."); *Wakefield v. British Med. Journal Publ'g Group, Ltd.*, 449 S.W.3d 172, 188 (Tex. App.—Austin 2014, no pet.) ("[T]he plaintiff must establish that the nonresident defendant's internet activity was intended to target and focus on the forum.").

 **\*11**  We agree with Yelp that "not anything goes" with respect to establishing specific jurisdiction over a company for its internet activities. But nor is the internet an invisibility cloak that prevents an actor from being haled into court in a given state simply because the actor used the internet in the course of targeting its activity at Texas. Here, Yelp took specific actions to *target* its communication at persons who were seeking help from Texas Crisis Pregnancy Centers. Yelp appended the Consumer Notice—which contains the statements that the State contends are misleading—about Texas Crisis Pregnancy Centers to the business pages of over 200 Texas Crisis Pregnancy Centers, including in the district where this suit was brought—Bastrop County. It is undisputed that the Consumer Notice at issue here was viewable only on "relevant Yelp pages"—in other words, the business listings for Crisis Pregnancy Centers, including the Texas locations.

These facts distinguish this case from 🚩 *Johnson*. In 🚩 *Johnson*, the plaintiff sued about a story that was posted on HuffPost's general news website. The site was "interactive," but its story about Johnson had "no ties to Texas"; did "not mention Texas"; recounted "a meeting that took place outside Texas," and "it used no Texan sources." 🚩 *Johnson*, 21 F.4th at 319. The Court further recognized that the mere fact that the website was accessible in Texas was the only possible basis for haling HuffPost into Texas courts, as HuffPost had not otherwise purposefully availed itself of Texas. 🚩 *Id.* at 320.

Accordingly, the Fifth Circuit held that it lacked jurisdiction over HuffPost with respect to Johnson's libel claim. 🚩 *Id.* at 325. This case is unlike 🚩 *Johnson* in all key respects: jurisdiction does not turn on mere website accessibility, but rather "internet activity was intended to target and focus on the forum." *Wakefield*, 449 S.W.3d at 188. Here, Yelp expressly acknowledges that, while some people come to Yelp to find businesses that offer the pregnancy resources that Crisis Pregnancy Centers provide, there are others who turn to Yelp to find reliable information about abortion providers, and that Yelp issued the Consumer Notice to help consumers make informed decisions. Here, the Consumer Notice was appended to Texas Crisis Pregnancy Centers, the customers of which are likely to be Texans. This is enough to establish the relatedness prong. [6]

### D. Exercise of Personal Jurisdiction over Yelp Comports with Traditional Notions of Fair Play and Substantial Justice.

Once minimum contacts have been established, we must consider whether, for other reasons, exercising jurisdiction over the nonresident defendant would offend "traditional notions of fair play and substantial justice." 🚩 *Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154. Rarely will properly exercised jurisdiction be found to impair fair play and substantial justice. 🚩 *Luciano*, 625 S.W.3d at 18. We consider Yelp's contacts with Texas in light of (1) the burden on the defendant; (2) the interests of the forum in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of several states in furthering fundamental substantive social policies. 🚩 *Id.* at 18–19.

 **\*12**  There is no undue burden placed upon Yelp by exercising jurisdiction. Yelp enjoys benefits and privileges when conducting business in Texas, which are accompanied by the corresponding obligation to answer suits that may arise from that business. 🚩 *Id.* at 19 ("[T]o the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state.") (quoting 🚩 *Int'l Shoe*, 326 U.S. at 319, 66 S.Ct. 154).

Yelp asserts that it will be burdensome for it to litigate this case in Texas because all of its witnesses and documents are located in California. The burden to litigate in Texas, however, is lessened by modern travel and technology. *See* ⚑ *id.*; ⚑ *Moncrief Oil Intern. Inc. v. OAO Gazprom*, 414 S.W.3d 142, 155 (Tex. 2013) ("Distance alone cannot ordinarily defeat jurisdiction."). Yelp also contends that the State's interest in the litigation is lessened because it has not named a specific consumer who has been harmed by Yelp's actions. The State, however has a strong interest in exercising jurisdiction to protect its citizens from activities that may violate the Deceptive Trade Practices Act. *See* ⚑ *Luciano*, 625 S.W.3d at 19 ("[B]y virtue of the Legislature's enactment of the Deceptive Trade Practices Act, ... Texas has demonstrated a special interest in protecting its citizens from the sort of activity alleged here."). Furthermore, as evidenced by the number of attorneys general who signed the letter sent to Yelp, several states share Texas's interest in ensuring that Crisis Pregnancy Centers are not the targets of actionable misleading statements, assuming *arguendo* that the State's allegations are meritorious. We conclude exercising jurisdiction over Yelp does not offend notions of fair play and substantial justice. We sustain the State's second issue.

## CONCLUSION

Having determined that Yelp is subject to specific jurisdiction in Texas, we reverse the trial court's order granting Yelp's special appearance and remand this case to the trial court.

**All Citations**

--- S.W.3d ----, 2025 WL 2936466

---

## Footnotes

1    Back when phones were still tethered to walls and not yet unleashed to dominate society, Americans typically owned hard-copy "telephone books." In those telephone books, the "yellow pages" were the section—readily identifiable by the yellow hue of the paper—listing "business and professional firms alphabetically by category and that include[ed] classified advertising." *Yellow Pages*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/yellow% 20pages (last visited 4 Oct. 2025).

2    *See e.g.,* ⚑ *Patel v. Pate*, No. 02-16-00313-CV, 2017 WL 2871684, at *5 n.4 (Tex. App.—Fort Worth July 6, 2017, no pet.) (mem. op.); ⚑ *Sembcorp Marine Ltd. v. Carnes*, Nos. 09-15-00430-CV, 09-15-00484-CV, 2016 WL 3019552, at *2 (Tex. App.—Beaumont May 26, 2016, no pet.) (mem. op.); ⚑ *Mi Gwang Contact Lens Co. v. Chapa*, No. 13-13-00306-CV, 2015 WL 3637846, at *3 n.2 (Tex. App.—Corpus Christi–Edinburg June 11, 2015, no pet.) (mem. op.); ⚑ *Accelerated Wealth, LLC v. Lead Generation & Mktg., LLC*, No. 04-12-00647-CV, 2013 WL 1148923, at *2 (Tex. App.—San Antonio Mar. 20, 2013, no pet.) (mem. op.); ⚑ *Hale v. Richey*, No. 10-11-00187-CV, 2012 WL 89920, at *4 (Tex. App.—Waco Jan. 11, 2012, no pet.) (mem. op.); ⚑ *Max Protetch, Inc. v. Herrin*, 340 S.W.3d 878, 883 (Tex. App.—Houston [14th Dist.] 2011, no pet.); ⚑ *Touradji v. Beach Cap. P'ship, L.P.*, 316 S.W.3d 15, 23 (Tex. App.—Houston [1st Dist.] 2010, no pet.); ⚑ *Ennis v. Loiseau*, 164 S.W.3d 698, 705 (Tex. App.—Austin 2005, no pet.).

3    Following submission of this appeal, Yelp filed several notices of supplemental authority citing other courts that have held that nonresident defendants do not impliedly consent to general jurisdiction in Texas by registering to do business in Texas. *See Morris v. Kan. City Ry.*, No. 2:24-CV-00018-JRG, 2024 WL 3347379, at *4 (E.D. Tex. July 8, 2024) ("⚑ *Mallory's* conclusion of implied consent to jurisdiction does not extend to the Texas long-arm statute."); *Certain Underwriters at Lloyd's, London v. Henry Vogt Mach. Co., Inc.*,

[712 S.W.3d 909, 924 (Tex. App.—Houston \[14th Dist.\] 2025, no pet.)](#) (concluding that by registering to do business in Texas a nonresident company does not impliedly consent to the exercise of personal jurisdiction over them by Texas courts); *[Repairify, Inc. v. Opus IVS, Inc.](#)*, No. 05-23-00921-CV, 2024 WL 2205663, at

[\*1 (Tex. App.—Dallas May 16, 2024, no pet.) (mem. op.)](#) ("\[U\]nlike Pennsylvania law in ⚑*[Mallory](#)*, none of Texas's business registration statutes—and nothing in Texas's long-arm scheme—includes any language specifically directing that complying with them would subject a business to personal jurisdiction in Texas."). Because this ground for jurisdiction does not appear in the State's pleadings, we need not address Yelp's supplemental authority addressing the State's arguments that by registering to do business in Texas Yelp consented to general jurisdiction.

4      We note that the Texas Supreme Court held that when a plaintiff fails to establish jurisdiction through its pleadings, the plaintiff "should amend the pleading to include the necessary factual allegations, *see* [Tex. R. Civ. P. 63](#), thereby allowing jurisdiction to be decided based on evidence rather than allegations, as it should be." ⚑*[Kelly](#)*, [301 S.W.3d at 659](#). Although the State could amend its pleadings to assert the facts underlying its general jurisdiction theory, the State need not do so because the State has alleged sufficient facts to demonstrate specific personal jurisdiction over Yelp on the claims at issue.

5      In another post-submission supplemental brief, Yelp cited a Thirteenth Court of Appeals case in which our sister intermediate court held that Google was not subject to specific jurisdiction in Texas because the State did not specifically plead that the operative facts of its Deceptive Trade Practices claim arose out of or were related to Google's contacts with Texas. ⚑*[Google LLC v. State](#)*, [No. 13-23-00114-CV, 2025 WL 52611, at \*7 (Tex. App.—Corpus Christi–Edinburg Jan. 9, 2025, pet. abated)](#) (mem. op.). This case is factually distinguishable in that, here, the State specifically pleaded that the operative facts arose out of or were related to Yelp's contacts with Texas.

6      In addition to its supplemental briefing on general jurisdiction, Yelp filed an additional supplemental brief citing two Texas Supreme Court cases in which the Court adhered to its long-established precedent that, in product-liability cases, Texas follows the "stream-of-commerce-plus" doctrine of personal jurisdiction and that "*\[t\]argeting Texas* remains the touchstone" when determining whether a nonresident defendant may be subject to personal jurisdiction in Texas. *See [BRP-Rotax GmbH & Co. KG v. Shaik](#)*, [716 S.W.3d 98, 108 (Tex. 2025)](#); *[Hyundam Indus. Co., Ltd. v. Swacina](#)*, [716 S.W.3d 167, 174 (Tex. 2025)](#). This is not a product liability case, but our determination that Yelp targeted Texas in appending the Consumer Notice to Texas Crisis Pregnancy Center business pages is consistent with the Texas Supreme Court's analysis in *Shaik* and *Swacina*.

---

**End of Document**                                      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Zoann Willis on behalf of Richard Berlin
Bar No. 24055161
zoann.willis@oag.texas.gov
Envelope ID: 107275058
Filing Code Description: Letter
Filing Description: 20251024 Letter of Supplemental Authority wExh 1
Status as of 10/24/2025 3:36 PM CST

Associated Case Party: State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Rick Berlin | | Rick.Berlin@oag.texas.gov | 10/24/2025 3:28:42 PM | SENT |
| Daniel Zwart | | Daniel.Zwart@oag.texas.gov | 10/24/2025 3:28:42 PM | SENT |
| Kaylie Buettner | | Kaylie.Buettner@oag.texas.gov | 10/24/2025 3:28:42 PM | SENT |
| Zoann Willis | | zoann.willis@oag.texas.gov | 10/24/2025 3:28:42 PM | SENT |
| Meredith Spillane | | Meredith.Spillane@oag.texas.gov | 10/24/2025 3:28:42 PM | SENT |
| Zeilic Contreras | | Zeilic.Contreras@oag.texas.gov | 10/24/2025 3:28:42 PM | SENT |
| Carlos Fernandez | | Carlos.Fernandez@oag.texas.gov | 10/24/2025 3:28:42 PM | SENT |
| Madeline Fogel | | madeline.fogel@oag.texas.gov | 10/24/2025 3:28:42 PM | SENT |
| Richard RMcCutcheon | | richard.mccutcheon@oag.texas.gov | 10/24/2025 3:28:42 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jonathan Hung | | johung@winston.com | 10/24/2025 3:28:42 PM | SENT |
| Eric Shinabarger | | EShinabarger@winston.com | 10/24/2025 3:28:42 PM | SENT |
| W. Reid Wittliff | | reid@wittliffcutter.com | 10/24/2025 3:28:42 PM | SENT |
| Jake Sommer | | jake@zwillgen.com | 10/24/2025 3:28:42 PM | SENT |
| Kelsey Harclerode | | kelsey@zwillgen.com | 10/24/2025 3:28:42 PM | SENT |
| Sudhir V. Rao | | sudhir.rao@zwillgen.com | 10/24/2025 3:28:42 PM | SENT |
| Sean Wieber | | swieber@winston.com | 10/24/2025 3:28:42 PM | SENT |
| Kevin Simpson | | kpsimpson@winston.com | 10/24/2025 3:28:42 PM | SENT |